UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON NDREMIZARA, | |
| Plaintiff, | Case No. 12-CV-05769 (KMK) |
| -v- | OPINION AND ORDER |
| SWISS RE AMERICA HOLDING CORPORATION, | |
| Defendant. | |

Appearances:

Jason Remi Ndremizara
Urbandale, IA
*Pro Se Plaintiff*

Susanne Kantor, Esq.
Jennifer Papas, Esq.
Jackson Lewis LLP
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiff Jason Ndremizara ("Ndremizara"), proceeding pro se, brings this Action against

Defendant Swiss Re America Holding Corporation ("Swiss Re"), alleging that Defendant's

decision not to hire him for an actuarial analyst position for which he applied violated the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34, and New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301.  Defendant moves under

Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's First Amended

Complaint for failure to state a claim upon which relief can be granted.  For the following

reasons, Defendant's Motion to Dismiss is denied without prejudice.

## I.  Background

### A.  Factual Background

Plaintiff describes himself as a 46-year-old, college-educated African-American with "strong academic backgrounds in Mathematics and Computer Science . . . ."  (First Am. Compl. 5.)[1]  Plaintiff is "planning to [pursue an] actuarial career," a field that he characterizes as "a highly skilled applied mathematical profession specialized in the evaluation of financial risk[]." (*Id.*)  Plaintiff "saw online at [Defendant's] career web site a posting for . . . [an] Actuarial Analyst . . . position[] . . . located in Armonk," New York, and decided to apply.  (*Id.* at 6; *see also* Pl.'s Ex. 1.)  Plaintiff states that this position was "entry-level," and "requir[ed] no actuarial job experience."  (*Id.*)  While Plaintiff is correct that the job posting did not list any actuarial job experience as an "[e]ssential" requirement, it did list as a "[d]esirable" requirement that an applicant have "[t]wo or more years of relevant actuarial experience within [the] Property & Casualty industry[,] preferably in a research role."  (Pl.'s Ex. 1.)  Plaintiff does not allege that he has such experience.  (*See* Def.'s Mem. of Law in Supp. of Its Mot. to Dismiss ("Def.'s Mem.") 3, 4; Pl.'s Mem. of Law in Supp. of His Affirmation in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mem.") 7.)

Plaintiff submitted his application on December 5, 2011.  (First Am. Compl. 6.)  Plaintiff did not list his age or date of birth on the résumé that he sent with his application.  (*See* Def.'s Aff. in Supp. of Its Mot. to Dismiss ("Def.'s Aff."), Ex. D.)  However, Plaintiff's résumé did list

---

[1]  Plaintiff included his statement of facts as an unpaginated attachment to the Southern District of New York Complaint for Employment Discrimination form that he filed with the Court as his First Amended Complaint on April 16, 2013.  (*See* Dkt. No. 18.)  Plaintiff inserted this attachment behind the First Amended Complaint's fourth page.  The Court will refer to the relevant pages of this attachment as if the First Amended Complaint had included the attachment in its pagination, beginning at page five.

the year in which he graduated with a Master of Science in Statistics and Economics from the

École nationale de la statistique et de l'administration économique ("ENSAE") in Paris, France

as 1993, and described Plaintiff as a "[s]easoned statistical analyst," "mature," and a "[m]id-

career professional." (*Id.*)  After submitting his application, Plaintiff received what appears to

have been an automated reply on the same day, in which Defendant informed him that it was "in

the process of reviewing [his] application and evaluating [his] possibilities within Swiss Re,"

and that it would "contact [him] as soon as possible." (First Am. Compl. 6; *see also* Pl.'s Ex. 2.)

Defendant subsequently rejected Plaintiff's application on December 15, 2011, and "continued

to look for other candidates." (*Id.*; *see also* Pl.'s Ex. 3.)  By way of rejection, Swiss Re recruiter

Sandra Ferencz ("Ferencz") informed Plaintiff in an email that "[a]fter careful consideration and

review of [his] application," the Swiss Re recruitment team had "determined that [Defendant]

would not be pursuing [his] candidacy at [that] time," but that Defendant wanted to "maintain

[Plaintiff's] candidate profile in [its] electronic database," and "encourage[d] [Plaintiff] to

update [his] information as [his] skills or jobs change[d]." (Pl.'s Ex. 3.)  Approximately two

months later, on or about February 16, 2012, Plaintiff "filed a discrimination charge with the

U.S. Equal Employment Opportunity Commission ["EEOC"] . . . in New York [C]ity," in which

he alleged that Defendant had violated the ADEA in connection with its decision to reject his

application. (First Am. Compl. 6; *see also* Pl.'s Ex. 13.)  Defendant appears to have received

notice of Plaintiff's EEOC charge at approximately the same time that Plaintiff filed it. (*See*

Pl.'s Ex. 13; Def.'s Mem. 5.)

      Despite Plaintiff's apparent belief that Defendant discriminated against him based on his

age, Plaintiff "checked the [Swiss Re] web site" again in March 2012, "saw that [Ferencz] was

still continuing to seek . . . applicants," and thereafter "decided to [once more] submit . . . [his]

application for the position[]" for which he had previously applied.  (First Am. Compl. 6.)  He did so on March 24, 2012, (*id.*), and received the same automated reply that Defendant had sent him following the submission of his first application, (*see* Pl.'s Ex. 4).  The next month, on April 10, 2012, Defendant confirmed its earlier rejection of Plaintiff's application.  (First Am. Compl. 6; *see also* Pl.'s Ex 5.)  Ferencz explained to Plaintiff that "[u]nfortunately, [he had] already applied to [the] position[,] and [was] notified on December 15, 2011 that [Defendant would] not be pursuing [his] candidacy," and that Defendant's "decision to not pursue [his] candidacy for [the] role ha[d] not changed."  (Pl.'s Ex. 5.)

Plaintiff alleges that, "[a]fter being informed by EEOC of the existence of [his] discrimination charge, [Defendant] then started to send [him] . . . an email" every two weeks, in which Defendant wrote that it "wanted to reach out and confirm that [his] application [was] still being considered and [that it was] continuing the recruiting process for the position: Actuarial Analyst (Armonk, NY)."  (First Am. Compl. 6; *see also* Pl.'s Exs. 6, 7.)  Defendant sent the first of four such emails to Plaintiff on April 13, 2012, which, like the other three, identified itself as "automatically generated mail," and asked Plaintiff to "[p]lease . . . not reply."  (*Id.*)  One week later, on April 20, 2012, the EEOC informed Plaintiff that it was closing its file on the age-based discrimination charge that he had submitted, as "[b]ased on its investigation, [it was] unable to conclude that the information obtained establishe[d] violations of the statutes."  (Pl.'s Ex.)[2]

---

[2] The EEOC Dismissal and Notice of Rights form described above is attached to Plaintiff's First Amended Complaint behind a page titled "Attachment," which itself appears behind Plaintiff's fourteenth exhibit.  The EEOC also noted in this form that its dismissal of Plaintiff's charge did "not certify that [Defendant] [was] in compliance with the statutes," and that "no finding [was] made as to any other issues that might be construed as having been raised by [Plaintiff's] charge."

One week after that, on April 27, 2012, Defendant sent a second email confirming that it was still considering Plaintiff's application and that the recruiting process was still ongoing. (*See* Pl.'s Ex. 6.)  Believing that Defendant had "sent [him] the e-mails in . . . good faith," and undeterred by Defendant's prior rejection of his application and subsequent confirmation of that rejection, Plaintiff "decided to []submit [his] application for the Actuarial Analyst . . . position[]" for a third time on May 17, 2012, by which submission he "aimed to reconfirm [his] interest in the position[]."  (First Am. Compl. 6.)[3]  On the same day that he submitted his application, Plaintiff once again received the same automated reply email that he had received in response to his first two applications.  (*See* Pl.'s Ex. 8.)  On June 23, 2012, Defendant sent Plaintiff a third automatically generated email confirming that it was still considering Plaintiff's application and that the recruiting process was still ongoing, followed by a fourth on July 7, 2012, (*see* Pl.'s Ex. 7), before reiterating its earlier rejection of Plaintiff's application for a second time on August 1, 2012, (First Am. Compl. 7; *see also* Pl.'s Ex. 9).  Echoing her most recent email, Ferencz wrote that "[u]nfortunately, [it was] the third time [that Plaintiff had] applied to [the] position," and that he had been "notified on December 15, 2011 and April 10, 2012 that [Defendant would] not be pursuing [his] candidacy.  [Defendant's] decision to not pursue [his] candidacy for [the] role ha[d] not changed."  (Pl.'s Ex. 9.)

Plaintiff asserts that the language that Defendant used in its emails "implicitly alleged that [he] was not qualified for the position[]," which implicit allegation "led [him] to investigate what kind of candidates [Defendant] selected or hired for its entry level actuarial analyst

---

[3] The name that Plaintiff used in submitting his third application was different than the name that he had used in submitting his prior two applications.  In connection with his third application, he called himself "Jason Ndremizara," instead of "Remi Randremizara."  (*See* Pl.'s Exs. 4–9.)

positions in Armonk . . . or in other locations such as Dallas, [Texas]," the latter being the location of another one of Defendant's offices to which Plaintiff had also applied, and by which he had also been rejected.  (First Am. Compl. 7.)   Plaintiff claims that he "discovered that many entry level candidates selected or hired by [Defendant] were younger or less qualified than [him]."  (*Id.*)  However, Plaintiff provides no specific examples as part of this claim in his Complaint or any of the exhibits attached thereto.  Indeed, he does not identify whether these supposedly younger or less-qualified people were hired in Armonk (which is the only location relevant to Plaintiff's claims in this Action), or Dallas, or both; how much younger they were; or why he believes them to be less qualified.

Plaintiff also states that "the single most important qualification for an entry level actuarial candidate is . . . actuarial exam progress," citing to an article titled "Advice on Obtaining an Actuarial Position" from "http://www.beanactuary.com," a website that appears to be run by the Society of Actuaries and the Casualty Actuarial Society.  (First Am. Compl. 7; Pl.'s Ex. 10.)  According to Plaintiff, "applicants with [one] actuarial exam combined with an excellent internship are desirable; applicants with [two] actuarial exams (Master level) with or without internship[s] are serious candidates; applicants with [three] actuarial exams (JD/PhD level) stand up [sic]; and all candidates with [four] exams (above JD/PhD level) like [him] have been given a job."  (First Am. Compl. 7.)  Plaintiff further claims that "[t]he majority of entry level candidates hired by [Defendant] had only between [zero] and [three] actuarial exams at that time whereas [he had] already succeeded . . . [in] pass[ing] [four] exams; therefore they were less qualified than [him] and [he] was far better qualified than many of them."  (*Id.*)  Again, Plaintiff provides no specific examples of any employees hired by Defendant instead of Plaintiff. Lastly, Plaintiff states that the "discrimination against [him] was also particularly malicious

because [Defendant] has been unable to find enough actuarial candidates who can pass actuarial exams like [him]," and that "each year[,] [Defendant] import[s] and train[s] foreign actuarial candidates to fill its demands unmet by Americans," claiming that "in 2012[,] [Defendant] filed 13 green card and H1B visa applications for foreign actuarial candidates." (*Id.*) However, Plaintiff does not allege that these applications were for employees hired instead of Plaintiff.

### B.  Procedural Background

Plaintiff filed his Complaint on July 23, 2012, in which he alleged that Defendant had discriminated against him, based on both his age and his race, in violation of the ADEA, NYSHRL, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. (*See* Dkt. No. 1.) On December 7, 2012, the Court held a premotion conference to address Defendant's request to file a Motion to Dismiss Plaintiff's Complaint, after which conference the Court set a briefing schedule. (*See* Dkt. No. 9.) In accordance with this schedule, Defendant filed its Motion to Dismiss on January 1, 2013. (*See* Dkt. Nos. 10–13.) Defendant argued that Plaintiff had failed to exhaust his administrative remedies as to his race-based discrimination claim, and had failed to state a claim of discrimination on the basis of either age or race. (*See* Dkt. No. 10.) In response, Plaintiff filed an Affirmation in Opposition on February 1, 2013, in which he appeared to rescind his race-based discrimination claim under Title VII, but continued to assert his age-based discrimination claims under the ADEA and NYSHRL, while confining those age-based discrimination claims to Defendant's August 1, 2012 confirmation of its earlier rejection of his application, excluding Defendant's December 15, 2011 rejection of his application and the April 10, 2012 rejection confirmation. (*See* Dkt. No. 14.) Defendant replied to Plaintiff's Affirmation on February 28, 2013. (*See* Dkt. No. 15–16.)

7

In an Order dated March 18, 2013, the Court wrote that "Plaintiff should be aware that Defendant argues that Plaintiff has failed to exhaust his administrative remedies as to the May 17, 2012 application," noting that "[a] plaintiff may bring an employment discrimination action under Title VII or the ADEA only after filing a timely charge with the EEOC or with a State or local agency with authority to grant or seek relief from such practice," and that "a plaintiff typically may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in his EEOC charge."  (Dkt. No. 17 (internal quotation marks omitted).)  Citing "Plaintiff's shifting allegations," the Court then denied Defendant's Motion to Dismiss without prejudice, "in order to allow Plaintiff to amend his complaint and clarify" his claims, and directed Plaintiff to file an Amended Complaint by no later than April 17, 2013.  (*Id.*)

Plaintiff timely filed his First Amended Complaint on April 16, 2013.  (*See* Dkt. No. 18.) In the First Amended Complaint, Plaintiff asserts only age-based discrimination claims under the ADEA and NYSHRL, and does not assert the race-based discrimination claim under Title VII that appeared in his original Complaint.  (*See* First Am. Compl. 1.)  However, according to Plaintiff, the age-based discrimination claims that he asserts in his First Amended Complaint relate not only to Defendant's August 1, 2012 confirmation of its earlier rejection of his application, but to its December 15, 2011 rejection of his application and its April 10, 2012 rejection as well.  (*See* First Am. Compl. 6–7; Pl.'s Mem. 5.)  Following a second premotion conference on July 18, 2013, at which Plaintiff did not appear, the Court set a briefing schedule for Defendant's Motion to Dismiss the First Amended Complaint, which Motion the Court had previously granted Defendant permission to file.  (*See* Dkt. No. 21.)  Defendant filed this Motion on August 6, 2013.  (*See* Dkt. Nos. 23–26.)  Plaintiff submitted an Affirmation in Opposition,

and a Memorandum in Support of that Affirmation, on September 18, 2013, (*see* Dkt. Nos. 27–28), to which Defendant replied on September 27, 2013, (*see* Dkt. Nos. 29–30), at which point Defendant's Motion was fully submitted.[4]

## II.  Discussion

### A.  Standard of Review

#### 1.  Rule 12(b)(6)

Defendant moves to dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks and alterations omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of

---

[4] Plaintiff submitted another Affirmation in Opposition in addition to the two described above on May 13, 2013.  (*See* Dkt. No. 19.)  However, it is unclear to which of Defendant's Motions to Dismiss Plaintiff intended this Affirmation to respond.  By the time Plaintiff filed his May 13, 2013 Affirmation, the Court had already denied Defendant's first Motion to Dismiss without prejudice, (*see* Dkt. No. 17), but Defendant had not yet filed its second Motion to Dismiss, (*see* Dkt. No. 23).  In deciding the instant Motion, the only Affirmation in Opposition on which the Court relies is the one that Plaintiff filed on September 18, 2013, (*see* Dkt. No. 27), which is the only Affirmation that can possibly be responsive to this Motion.

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff

has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed," *id; see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hyper-technical, code-pleading regime of a

prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions.").

　　　"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see*

*also Dixon v. United States*, No. 13-CV-2193, 2014 WL 23427, at *1 (S.D.N.Y. Jan. 2, 2014)

("For the purpose of this motion to dismiss, we assume that the facts alleged in [the plaintiff's]

complaint are true.").  Further, "[f]or the purpose of resolving [a] motion to dismiss, the

Court . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T&M Prot. Res.,*

*Inc.*, No. 13-CV-4384, 2014 WL 182341, at *1 n.1 (S.D.N.Y. Jan. 16, 2014) (citing *Koch v.*

*Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule

12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Disc.*

*Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Because Plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, No. 12-CV-6666, 2013 WL 5863561, at *2 (S.D.N.Y. Oct. 31, 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (emphasis and internal quotation marks removed)).

## 2. Age Discrimination in Employment Act of 1967

The ADEA provides in part that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a).  The statute limits the class of persons protected by this prohibition "to individuals who are at least 40 years of age." *Id.* at § 631(a).  "To establish a prima facie case [under the ADEA], a plaintiff with an age discrimination claim must show (1) that [he or] she was within the protected age group, (2) that [he or] she was qualified for the position, (3) that [he or] she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (internal quotation marks omitted); *see also Mingguo Cho v. City of New York*, —

11

Fed. Appx. —, 2013 WL 6570611, at *2 (2d Cir. Dec. 16, 2013) (same); *Barker v. Ellington Bd. of Educ.*, No. 12-CV-313, 2013 WL 6331159, at *10 (D. Conn. Dec. 5, 2013) (same).[5]

As to the third *prima facie* factor, "[i]n the context of a claim for discrimination under the ADEA, a plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Visco v. Brentwood Union Free Sch. Dist.*, No. 13-CV-11, 2014 WL 66548, at *7 (E.D.N.Y. Jan. 8, 2014) (internal quotation marks and alterations omitted) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)); *see also Hrisinko v. New York City Dep't of Educ.*, 369 F. App'x 232, 235 (2d Cir. 2010) ("An adverse employment action occurs when there is a materially adverse change in the terms and conditions of employment." (internal quotation marks omitted)). "To be materially adverse[,] a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kassner*, 496 F.3d at 238 (internal quotation marks omitted); *see also Crowe v. Leroy Cent. Sch. Dist.*, 949 F. Supp. 2d 435, 442–43 (W.D.N.Y. 2013) (same). "A material adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." *Nakis v. Potter*, 422 F. Supp. 2d 398, 420 (S.D.N.Y. 2006) (internal quotation marks omitted). "The Second Circuit has applied this definition broadly to include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Graham v. Watertown City Sch. Dist.*, No. 10-CV-756, 2011 WL

---

[5] Claims under the NYSHRL are analyzed identically to claims under the ADEA. *See Brown v. City of New York*, No. 10-CV-3104, 2011 WL 6003921, at *6 n.4 (S.D.N.Y. Nov. 30, 2011) (noting that, "[t]o the extent that [the] plaintiff [sought] to invoke the NYSHRL," the court would "analyze[] such allegations under the same . . . framework" that it used for ADEA claims") (collecting cases), *aff'd*, 512 F. App'x 29 (2d Cir. 2013); *Dixon v. Int'l Fed'n of Accountants*, No. 09-CV-2839, 2010 WL 1424007, at *3 (S.D.N.Y. Apr. 9, 2010) ("Discrimination claims under . . . [the] ADEA . . . [and the] NYSHRL . . . are analyzed identically . . . .") (collecting cases), *aff'd*, 416 F. App'x 107 (2d Cir. 2011).

1344149, at *6 (N.D.N.Y. Apr. 8, 2011) (internal quotation marks omitted) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)).

As to the fourth *prima facie* factor, "[t]here are a variety of ways in which a plaintiff can demonstrate that the adverse employment action took place under circumstances giving rise to an inference of age discrimination." *Del Valle v. City of New York*, No. 11-CV-8148, 2013 WL 444763, at *4 (S.D.N.Y. Feb. 6, 2013) (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 503 (2d Cir. 2009)), *superseded by statute*, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85, *as recognized in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).  For example, an inference of age discrimination may be raised where a plaintiff "alleges that she was within the protected class, that she was rejected for a position, and that the position was filled by a person significantly younger than her." *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013) (collecting cases).  "An age discrimination plaintiff may also seek to rely on . . . comments or remarks evidencing ageist views, evidence that similarly situated younger employees are treated more favorably than older ones, or statistical evidence demonstrating a pattern of adverse employment actions taken against older employees." *Del Valle*, 2013 WL 444763, at *4 (citations omitted).

"[I]n an ADEA case . . . where a plaintiff [seeks to] rel[y] on a substantial age discrepancy between herself and her replacement, she must adduce some evidence indicating [the defendant's] knowledge as to that discrepancy" in order to establish that the adverse employment action that he experienced "occurred under circumstances giving rise to an inference of discrimination." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82–83 (2d Cir. 2005). In "most ADEA cases," "where such knowledge is undisputed," "a court need not specifically address this point; rather it may be assumed in considering whether the circumstances presented

13

indicate intentional discrimination." *Id.* at 83.  However, "where a defendant asserts that the record fails to indicate the requisite awareness, a plaintiff must adduce some evidence, whether direct or indirect, indicating a defendant's knowledge as to the relative ages of the persons compared." *Id.*  "[D]iscriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant." *Id.* at 82.  *See also Bucalo*, 691 F.3d at 130 ("As we noted in *Woodman v. WWOR-TV, Inc.*, . . . an ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a defendant's knowledge as to the significant age discrepancy to support a *prima facie* inference of discriminatory intent." (internal quotation marks omitted)); *Brunner v. Novartis Pharm. Corp.*, No. 10-CV-6338, 2013 WL 4647812, at *5 (W.D.N.Y. Aug. 29, 2013) ("[T]o establish a prima facie case of discrimination . . . , the plaintiff must establish that the defendant had knowledge of the candidates['] ages . . . ."); *Andretta v. Napolitano*, 922 F. Supp. 2d 411, 418 (E.D.N.Y. 2013) ("Plaintiff may satisfy his minimal *prima facie* burden merely by showing that Defendant knew of the applicants' age difference and treated younger applicants more favorably than Plaintiff."); *Antunes v. Putnam/N. Westchester Bd. of Co-op. Educ. Servs.*, No. 09-CV-3063, 2011 WL 1990872, at *6 n.17 (S.D.N.Y. May 19, 2011) ("Even if the decision makers did not know Plaintiff's exact age, they were surely aware of his approximate age and that he was much older than [the individual whom the defendant promoted instead of Plaintiff].  Therefore, this requirement is satisfied."), *aff'd sub nom. Antunes v. Putnam N. Westchester Bd. of Co-op. Educ. Servs.*, 482 F. App'x 661 (2d Cir. 2012); *Edwards v. William Raveis Real Estate, Inc.*, No. 08-CV-1907, 2010 WL 3829060, at *5 (D. Conn. Sept. 22, 2010) ("As a threshold matter, [the plaintiff] cannot support her inference of age discrimination without evidence that [the defendant and the defendant's representative] were *aware* of the age difference between [the plaintiff] and [the individual who was hired to replace

the plaintiff] when [the defendant and the defendant's representative] made their decision to fire [the plaintiff].").

Importantly, a "[p]laintiff need not make out a *prima facie* case at the pleading stage, and may withstand a motion to dismiss by providing a short and plain statement of the claim that shows that []he is entitled to relief and that gives [the defendant] fair notice of the age discrimination claim and the grounds upon which it rests." *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 6068597, at *1 (S.D.N.Y. Nov. 15, 2013); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) ("The prima facie case [requirements are] an evidentiary standard, not a pleading requirement. . . . This Court has never indicated that the requirements for establishing a prima facie case . . . also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Kurian v. Forest Hills Hosp.*, No. 12-CV-4539, 2013 WL 3766588, at *6 (E.D.N.Y. July 15, 2013) ("[T]he survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a prima facie case . . . ." (internal quotation marks omitted)); *McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at *6 (S.D.N.Y. July 10, 2013) ("[A]t this pleading stage[, the plaintiff] is not required to demonstrate every element of a *prima facie* case of age discrimination."). However, "[a]lthough a plaintiff need not plead facts to establish a *prima facie* case of employment discrimination in order to survive a motion to dismiss," courts nevertheless "consider[] the elements of a *prima facie* case in determining whether there is sufficient factual matter in the Complaint which, if true, give[s] [the] [d]efendant[] fair notice of [the] [p]laintiff['s] employment discrimination claims and the grounds on which such claims rest." *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 195 (E.D.N.Y. 2010) (internal quotation marks and alterations omitted); *see also Sommersett v. City of New York*, No. 09-CV-

5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) ("Although Plaintiff need not allege

facts sufficient to make out a *prima facie* case for any of her discrimination claims in her

Complaint, the elements thereof provide an outline of what is necessary to render her claims for

relief plausible."); *Barker v. UBS AG*, No. 09-CV-2084, 2011 WL 283993, at *5 (D. Conn. Jan.

26, 2011) ("[E]ven though establishing a prima facie case of age discrimination is not necessary

to survive a motion to dismiss, courts do use the standard as a guidepost when determining

whether the plaintiff has provided the defendant with fair notice of her claim, as required by the

Federal Rules of Civil Procedure."); *cf. Wolf v. Time Warner, Inc.*, No. 09-CV-6549, 2012 WL

4336232, at *10 (S.D.N.Y. Sept. 17, 2012) ("A Plaintiff in an ADEA action must *plausibly*

*plead*, *inter alia*, that the circumstances surrounding an adverse employment action give rise to

an inference of age discrimination." (first emphasis added) (citing *Gorzynski v. Jetblue Airways*

*Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)), *aff'd*, No. 12-CV-4226, 2013 WL 6670685 (2d Cir.

Dec. 19, 2013).

    B.  Analysis

        Defendant argues that "Plaintiff has absolutely no factual support for his claim that

[Defendant] somehow knew his age in December 2011 . . . ." (Def.'s Mem. 13.)  An

examination of the documents upon which the Court is entitled to rely in ruling on Defendant's

Motion reveals that Defendant is incorrect.  It is true that Plaintiff's résumé does not state his age

or list his date of birth.  But, as noted above, the résumé that Plaintiff submitted in connection

with his December 2011 application listed as the year in which he graduated with a Master of

Science from ENSAE as 1993, and described Plaintiff as a "[s]easoned statistical analyst,"

"mature," and a "[m]id-career professional."  (*See* Def.'s Aff., at Ex. D.)  From his graduation

date alone, Defendant could reasonably have inferred Plaintiff's approximate age.  *See Bucalo*,

16

691 F.3d at 130 (relying on the résumé of the individual hired instead of the plaintiff, "which [résumé] suggested that [the individual] was in her early 30s," in finding that "there was some evidence in the record that" the defendant was aware of the age discrepancy between the plaintiff and the individual); *Stone v. Ballard*, 526 F. App'x 688, 690 (7th Cir. 2013) ("[The defendant] could have inferred [the plaintiff's] age from his résumé, which listed work experience dating back to 1973."), *cert. denied*, 134 S. Ct. 478 (2013); *Hall v. Hormel Foods Corp.*, No. 98-CV-304, 2000 WL 35621752, at *6 (D. Neb. Mar. 14, 2000) ("[The defendant's] personnel manager . . . denies having been aware of [the plaintiff's] age at the time, but the year [that the plaintiff] graduated from high school was on the résumé sent to [the personnel manager], so [the defendant] is deemed to have known that [the plaintiff] was a member of the protected class at the time he applied."), *aff'd sub nom. Hall v. Hormel Foods, Corp.*, 7 F. App'x 541 (8th Cir. 2001).  To fall outside the ADEA's protected class at the time of his application, Plaintiff would have had to have graduated from one of France's premier institutions of higher learning with an advanced degree at the age of 22.  While Defendant might reasonably have inferred that Plaintiff was the Doogie Howser of aspiring actuaries, it is the Plaintiff in whose favor the Court is required to draw all reasonable inferences at this stage.  *See Daniel*, 2014 WL 182341, at *1 n.1 ("For the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff.").

It deserves mentioning that Plaintiff does not argue that Defendant could have inferred his age from his résumé.  In fact, Plaintiff asks the Court to "reject [his résumés] as evidence because *none* of the disputed matters in the present case rely on [them]."  (Pl.'s Aff. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Aff.") 2.)  In relation to Defendant's "alleged non-knowledge of [Plaintiff's] age," Plaintiff argues "that [Defendant] got . . . strong material proof of [his]

17

protected class when it received the notice of age discrimination charges from EEOC *but not on the resume*." (*Id.* at 2–3 (emphasis added).)  However, there is reason to believe that Plaintiff might not have realized that his graduation date was listed on his résumé, and that if he had realized that it was, he would not have asked the Court to disregard it.  Elsewhere in his Affirmation, Plaintiff writes that Defendant "did check [his] credentials and this checking of [his] credentials did allow [Defendant] to get information about [his] age," as his "school's online system gives [the viewer] not only the name of [his] diploma, but other information such as [his] . . . *year of graduation*." (*Id.* at 4 (emphasis added).)  The Court does not consider Plaintiff's argument that Defendant "checked [his] credentials" in analyzing whether Plaintiff has plausibly pleaded that Defendant was aware of his age when it rejected his application on December 15, 2011, as Plaintiff admitted to the Court during the December 7, 2012 premotion conference that this argument was based only on his assumption that Defendant had done so, which assumption is altogether factually unsupported.[6]  But the foregoing passage suggests that Plaintiff could assert that Defendant's knowledge of his year of graduation could have put Defendant on notice of his age.  Given that the Court is obligated to "construe[] [Plaintiff's]

---

[6] (*See* Hr'g Tr. 4–5 ("THE COURT: How is it that, based on your mere application, your paper application to Swiss Re, that you allege that Swiss Re even knew what your race was to make out a claim of race discrimination?  MR. NDREMIZARA: It says on—the hiring manager does hiring, they do search, and, there, they can have access.  For example, if they try to check my college degree at my school, the school's website give the name of my diploma, but the school also give my photo picture.  THE COURT: But you don't have any allegation that they even did any of this.  That would only be true if they did that kind of due diligence, but you don't allege that they did that.  MR. NDREMIZARA: I assume that they did a search on the applicant.  THE COURT: You don't know what research they did based on just the mere submission of your application.  MR. NDREMIZARA: I assume that they did check my diploma, they did check my exam, they did check—  THE COURT: You assume that, but you don't know that.  MR. NDREMIZARA: Yes, your honor. . . .  THE COURT: And you don't allege that they did check your credentials.  MR. NDREMIZARA: I assume.").)

[complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]," *Sykes*, 723 F.3d at 403; that the Court is entitled to consider "documents appended to the complaint or incorporated in the complaint by reference," *Leonard F.*, 199 F.3d at 107, such as Plaintiff's résumé; and that the Court's consideration of Plaintiff's résumé inures to his benefit, the Court respectfully declines Plaintiff's invitation to disregard it.  Accordingly, the Court finds that Defendant could reasonably have inferred Plaintiff's age from his résumé before December 15, 2011, when it took action in response to one of his applications for the first time.

However, there is another reason to question the contention that Defendant appears to be advancing—that Plaintiff has failed to plausibly plead that Defendant knew his age when he suffered "adverse employment action," as that term is used in the description of the third factor that a plaintiff must satisfy to make out a *prima facie* case of employment discrimination.  *See Bucalo*, 691 F.3d at 129.  Plaintiff filed the EEOC charge in which he alleged that Defendant had engaged in age-based discrimination against him on February 16, 2012, (*see* First Am. Compl. 6; *see also* Pl.'s Ex. 13), approximately two months before its first confirmation of its rejection of Plaintiff's application on April 10, 2012, (*see id.*; *see also* Pl.'s Ex. 5), and approximately five-and-a-half months before its second confirmation of that rejection on August 1, 2012, (*see id.* at 7; *see also* Pl.'s Ex. 9).  As Plaintiff argues, "it's written in the notice that it was an Age Discrimination charge; therefore, since the reception [sic] of the notice, [Defendant] got . . . additional material proof/evidence that [Plaintiff] was over 40 . . . ."  (Pl.'s Mem. 10.)  In other words, Plaintiff asserts that, because Defendant received his EEOC charge before it decided not to hire him for the second and third times, it must have been aware of his age when it made those decisions.

Using the EEOC charge in which Plaintiff alleged that Defendant had discriminated against him based on his age to demonstrate Defendant's awareness of his age is suspect, as it is far from clear whether Defendant's April 10, 2012 and August 1, 2012 communications with Plaintiff can be fairly characterized as "adverse employment actions."  In its December 15, 2011 communication with Plaintiff, Defendant wrote that "[a]fter careful consideration and review of [his] application," the Swiss Re recruitment team had "*determined* that [Defendant] would not be pursuing [his] candidacy at [that] time."  (Pl.'s Ex. 3 (emphasis added).)  But in its April 10, 2012 communication with Plaintiff, Defendant wrote that, "[u]nfortunately, [he had] already applied to [the] position[,] and [was] notified on December 15, 2011 that [Defendant would] not be pursuing [his] candidacy. *[Defendant's] decision to not pursue [his] candidacy for [the] role ha[d] not changed*."  (Pl.'s Ex. 5 (emphasis added).)  Defendant used similar language in its August 1, 2012 communication with Plaintiff, in which it wrote that, "[u]nfortunately, [it was] the third time [that he had] applied to [the] position[,] and [he was] notified on December 15, 2011 and April 10, 2012 that [Defendant would] not be pursuing [his] candidacy.  *[Defendant's] decision to not pursue [his] candidacy for [the] role ha[d] not changed.*"  (Pl.'s Ex. 9 (emphasis added).)  An argument could be made that the only time that Defendant actually *rejected* Plaintiff's application was on December 15, 2011; that the two subsequent emails it sent to Plaintiff on April 10, 2012 and August 1, 2012 were mere *confirmations of that rejection*; and that the December 15, 2011 rejection was thus the only "adverse employment action"—the "refusal to hire," *Graham*, 2011 WL 1344149, at *6, or "deprivation of a position or an opportunity," *Nakis*, 422 F. Supp. 2d at 420—that Defendant ever took against Plaintiff, and on which Plaintiff's First Amended Complaint could therefore be predicated.  Such an argument is hardly specious, as the Court shares the discomfort that another court within this District

20

expressed in connection with its consideration of a retaliation action that a plaintiff filed against his former employer:

> Our concern . . . is with extending the scope of an "adverse employment action" to include a failure to rehire an individual in litigation with his former employer. Such a rule creates a worrisome opportunity for the manufacture of frivolous claims. *That is, a plaintiff may bootstrap additional and unmeritorious claims to a discrimination lawsuit merely by reapplying for his former job, and subsequently being rejected from it.*

*Carr v. Health Ins. Plan of Greater New York, Inc.*, No. 99-CV-3706, 2001 WL 563722, at \*3 (S.D.N.Y. May 24, 2001) (emphasis added). However, Defendant does not make the argument that its April 10, 2012 and August 1, 2012 communications were not "adverse employment actions." In fact, Defendant describes those communications as "hiring decisions," (Def.'s Mem. 1), and writes that December 15, 2011 was the date on which it "*first* rejected Plaintiff's application for employment," (*id.* at 1–2), suggesting that it concedes that those subsequent communications were in fact "refusal[s] to hire," *Graham*, 2011 WL 1344149, at \*6, in which Plaintiff was "depriv[ed] of a position or an opportunity," *Nakis*, 422 F. Supp. 2d at 420. Rather, Defendant argues that it "made its determination not to pursue Plaintiff's candidacy in December 2011 based on Plaintiff's resume—before ever receiving the February 2012 EEOC Charge—and remained consistent on that issue." (*Id.* at 11.) This statement is best interpreted as an argument that Defendant had a "legitimate, nondiscriminatory reason" for its decision not to hire Plaintiff, under the second step of the three-step burden-shifting analysis that the Supreme Court enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for the evaluation of discrimination claims, and that Defendant never departed from that initial reasoning in its subsequent two rejections. *See Bucalo*, 691 F.3d at 128–29 (describing three-step *McDonnell Douglas* burden-shifting analysis). But the second *McDonnell Douglas* step is only implicated

once a plaintiff establishes a *prima facie* case of employment discrimination, and accordingly, the Court does not consider whether Defendant had a legitimate, nondiscriminatory reason for not hiring Plaintiff when analyzing whether Plaintiff's First Amended Complaint survives Defendant's Motion to Dismiss; such an argument is instead properly raised in a motion for summary judgment. *See Friel v. Cnty. of Nassau*, 947 F. Supp. 2d 239, 250–51 (E.D.N.Y. 2013) ("[A]t the pleading stage, the Court does not apply the *McDonnell Douglas* burden shifting test used to analyze the evidentiary support for discrimination claims."); *Hitchins v. NYC Dep't of Educ.*, No. 11-CV-4180, 2013 WL 1290981, at *3 (E.D.N.Y. Mar. 28, 2013) (same); *Garzon v. Jofaz Transp., Inc.*, No. 11-CV-5599, 2013 WL 783088, at *3 (E.D.N.Y. Mar. 1, 2013) (same); *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011) ("Defendants make various arguments under [the *McDonnell Douglas*] rubric in support of their motion to dismiss—including . . . [that] the defendants had a legitimate nondiscriminatory reason in rejecting the plaintiff['s] application.  However, . . . the *McDonnell Douglas* burden-shifting analysis is not applied at the motion to dismiss stage.").[7]  Regardless, because the Court finds that Defendant could reasonably have inferred Plaintiff's approximate age from his résumé alone, which it received on December 5, 2011, (*see* First Am. Compl. 6; *see also* Pl.'s Ex. 2), before it made any decision whatsoever in regard to his application, Defendant's argument that Plaintiff's First Amended Complaint must be dismissed for failure to plausibly plead facts

---

[7] The same holds true for Defendant's argument that "Plaintiff cannot meet his burden of proving that age was the '*but for*' reason he was not hired."  (Def.'s Mem. 14.)  As Defendant points out, the "plaintiff's [burden] to present sufficient evidence to permit a rational finder of fact to infer that the defendant's proffered [legitimate, nondiscriminatory] reason [for not hiring the plaintiff] is a pretext and that age was the 'but for' cause of the challenged adverse employment action" is only triggered at *McDonnell Douglas*'s third step.  (*Id.*)  As such, the Court does not consider this argument at the motion-to-dismiss stage.

suggesting that Defendant knew Plaintiff's age when Plaintiff suffered "adverse employment action" fails.

However, Plaintiff's First Amended Complaint may be dismissed for a similar but distinct reason, which reason Defendant did not fully develop in its motion papers. Although Defendant could have reasonably inferred Plaintiff's age from his résumé (and certainly from the subsequent filing of the EEOC charge), there is a very real question whether Plaintiff has plausibly alleged that Defendant filled the actuarial analyst position with a person significantly younger and/or less qualified than Plaintiff. *See Woodman*, 411 F.3d at 90 ("[I]n a discriminatory treatment case, an ADEA plaintiff who is *replaced by a significantly younger worker* must offer some evidence of a defendant's knowledge as to the *significant age discrepancy* to support a *prima facie* inference of discriminatory intent." (first and second emphases added)); *Munoz-Nagel*, 2013 WL 1809772, at *7 ("[C]ourts in this Circuit have found that a plaintiff makes out a *prima facie* claim for age discrimination where she alleges that she was within the protected class, that she was rejected for a position, *and that the position was filled by a person significantly younger than her.*" (emphasis added)) (collecting cases); *Hampton v. Diageo N. Am., Inc.*, No. 04-CV-346, 2008 WL 350630, at *6 (D. Conn. Feb. 7, 2008) ("The following evidence raises an inference of age discrimination. All the candidates selected for the . . . positions for which Plaintiffs applied or were considered . . . were significantly younger . . . than Plaintiffs . . . ."). And if Plaintiff has failed to plausibly plead that Defendant hired a significantly younger person instead of him, he also necessarily would have failed to plausibly plead that Defendant was aware of the "relative ages of the persons compared," as the Second Circuit has noted is required "where a plaintiff [seeks to] rel[y] on a substantial age discrepancy between herself and her replacement" in order to establish that the

23

adverse employment action that he experienced "occurred under circumstances giving rise to an inference of discrimination." *Woodman*, 411 F.3d at 82–83; *see also Bucalo*, 691 F.3d at 130 ("[A]n ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a defendant's knowledge *as to the significant age discrepancy* to support a *prima facie* inference of discriminatory intent." (first emphasis added) (internal quotation marks omitted)); *Brunner*, 2013 WL 4647812, at *5 ("[T]o establish a prima facie case of discrimination . . . , the plaintiff must establish that the defendant had knowledge of *the candidates['] ages* . . . .  Because the plaintiff has failed to present any evidence that [the defendant] knew [the plaintiff's] age *or the age of the successful candidate*, [the] plaintiff has failed to make a prima facie showing that discrimination can be inferred from the hiring of a younger individual." (emphasis added)); *Andretta*, 922 F. Supp. 2d at 418–19 ("Plaintiff may satisfy his minimal *prima facie* burden merely by showing that Defendant *knew of the applicants' age difference and treated younger applicants more favorably than Plaintiff* . . . ."); *Edwards*, 2010 WL 3829060, at *5 ("As a threshold matter, [the plaintiff] cannot support her inference of age discrimination without evidence that [the defendant and the defendant's representative] were *aware* of *the age difference between [the plaintiff] and [the individual who was hired to replace the plaintiff]* when [the defendant and the defendant's representative] made their decision to fire [the plaintiff]." (second emphasis added)); *Getler*, 2007 WL 38276, at *9 ("The Second Circuit has explained . . . that for replacement by a younger worker to support the inference of discrimination necessary to establish a prima facie case, there must be some evidence showing a defendant acted with knowledge as to the plaintiff's age *relative to that of his or her replacement*." (emphasis added) (internal quotation marks and alterations omitted)).

Among other claims, Plaintiff merely asserts that he "discovered that many entry level candidates selected or hired by [Defendant] were younger or less qualified than [him]," (First Am. Compl. 7), but this assertion is entirely conclusory, "naked," and "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.[8]  Indeed, Plaintiff provides no details about these supposed employees, including when they were hired, by which office they were hired (Armonk or Dallas), what their experience, age, or qualifications were, or whether Defendant knew of their ages.  Given this general and unsubstantiated claim, Defendant may well have a basis to move to dismiss this case.  *See Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *2 n.3 (S.D.N.Y. July 22, 2011) (finding pro se plaintiff failed to plausibly plead ADEA claim where plaintiff merely alleged that he was over 40 and was replaced by two younger employees); *Maysonet v. Citi Group, Inc.*, No. 10-CV-4616, 2011 WL 476610, at *5 (S.D.N.Y. Feb. 9, 2011) (dismissing ADEA claim where plaintiff merely alleged that she was in her mid-40's and that the defendant hired others in their mid-20's, without alleging any facts about the employee who replaced plaintiff); *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 465–66 (S.D.N.Y. 2010) (dismissing ADEA claim where plaintiffs "merely allege[d] that [they were] over 40 years of age and were replaced by younger teachers").[9]

---

[8] In his Affirmation, Plaintiff also asserts that he has "affirmed since [his] first complaint that the candidates selected and hired by Swiss Re for its entry level actuarial positions were younger candidates in their 20s or in their early 30s . . . ." (Pl.'s Aff. 5.)  Like the assertion described above, this assertion is also conclusory, "naked," and "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

[9] Whether Plaintiff had plausibly pleaded that Defendant hired a significantly younger candidate instead of him was the subject of an exchange between Plaintiff and Defendant in their submissions related to Defendant's first Motion to Dismiss.  In the Affirmation in Opposition that he filed in response to that Motion on February 1, 2013, in support of his argument that Defendant hired candidates who were significantly younger than him, Plaintiff wrote that "[Defendant] hired Ms. Caitlyn L . . . around August 2012," and that "Ms. Caitlyn L . . . is in her

20s because she graduated from [h]igh [s]chool in 2008." (Dkt. No. 14 at 11–12.) He also attached what appears to be "Caitlyn L's" LinkedIn profile to his Affirmation. (*See* Dkt. No. 14 at Ex. 12.) But in its Reply Affirmation, Defendant noted that, "[n]otwithstanding the attachment of various documents and information to Plaintiff's Opposition papers relating to [Defendant's] hiring of 'Caitlyn L,' [that] individual was not hired for any position sought by Plaintiff," and noted that "'Caitlyn L' was in the intern program for [Defendant] as of May 2011," and that as of the time of Defendant's submission of its Reply Affirmation, she was "in . . . [Defendant's] 18-month graduates program." (*See* Dkt. No. 16 at ¶ 7.) Based on the face of her LinkedIn profile, it appears as though "Caitlyn L" was not employed by Defendant as an "Actuarial Analyst," the position to which Plaintiff applied, but was instead hired into Defendant's 18-month graduates program. (*See* Dkt. No. 14 at Ex. 12 (describing "Caitlyn L's" current position as "Graduate - Casualty Pricing at [Defendant]," and stating, "I am in Swiss Re's 18 month graduates program").

In responding to this Opinion, Plaintiff should be aware that singling out an individual who happens to work for Defendant in the same general field and at the same location as Plaintiff would have had he been hired, or broadly stating that "many entry level candidates selected or hired by [Defendant] were younger or less qualified than [Plaintiff]," does not establish that these individuals were hired *instead of* Plaintiff for the position for which he applied. *See Del Valle*, 2013 WL 444763, at *4 ("[T]he plaintiff has not shown that he was actually replaced by a younger person. The only admissible evidence on this issue is the plaintiff's testimony that . . . he saw [his supposed replacement] teaching in his classroom and she appeared to him to be 'in her 20s.' The plaintiff infers that the woman he saw . . . was his replacement because when he returned to his classroom . . . he found a small purse and other belongings of the former teacher. This circumstantial evidence hardly demonstrates that the plaintiff was replaced . . . by a substantially younger teacher."); *Munoz-Nagel*, 2013 WL 1809772, at *7 ("[Plaintiff] alleges that Defendant preferred to hire college students and younger applicants[,] that most of the applicants for the job she applied for were younger than her[,] and that she believes most of them were hired. Although Plaintiff is entitled to plead facts upon information and belief, she has failed to accompany her allegations with . . . a statement of the facts upon which the belief is founded. Accordingly, because Plaintiff has pointed to no information that would render her belief that younger applications were hired over her anything more than a conclusory assertion, the Court finds that she has failed to state a claim under the ADEA." (citation, internal quotation marks, and alterations omitted)).

Plaintiff did not submit "Caitlyn L's" LinkedIn profile with his First Amended Complaint, which would be an unsurprising strategic decision, given the explanation that Defendant provided in its Reply Affirmation. However, Plaintiff's omission of her profile appears to have been motivated by his misunderstanding of the Court's March 18, 2013 Order. (*See* Dkt. No. 18.) In his Affirmation, Plaintiff writes that "Defendant has already brought this allegation of [his] non-knowledge of age and race of hired candidates in . . . Defendant's first motion to dismiss [his] complaint"; that during the December 7, 2012 premotion conference, the Court "asked [him] to bring proofs, and [he] did [bring] proofs when [he] responded to . . .

26

The Court is mindful that "[t]he Second Circuit, as a general matter, is solicitous of *pro se* litigants, enforcing standards of procedural leniency rather than holding them to the rigidities of federal practice." *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748, at *2 n.1 (S.D.N.Y. Sept. 27, 2013) (internal quotation marks omitted).  Pro se litigants are "ordinarily afforded" "special solicitude," which "takes a variety of forms," including "relaxation of the limitations on the amendment of pleadings . . . ." *Tracy v. Freshwater*, 623 F.3d 90, 100–01 (2d Cir. 2010).  But "[i]n some circumstances, such as when a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience, . . . it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." *Id.* at 102.  This is one of those circumstances, as this Action is one of nine filed by Plaintiff where he has alleged that a putative employer failed to hire him for discriminatory reasons.  *See Ndremizara v. Towers Watson*, No. 12-CV-1358, 2013 WL 4498977, at *1 (D.D.C. Aug. 21, 2013) (granting motion to dismiss, and noting that "this complaint is one of nine nearly-identical complaints, with only the defendant's name changed, filed by [Plaintiff] against other companies that have failed to hire him") (collecting Plaintiff's filed actions).

---

Defendant's motion to dismiss [his] complaint"; and that the Court then "dismissed the Defendant's motion[,] [which] means that the Court has already decided that Defendant was wrong in this matter." (Pl.'s Aff. 5.)  To the extent that Plaintiff has relied upon the Court's Order as some sort of finding that his original Complaint was not deficient for failing to identify a significantly younger candidate that Defendant hired instead of him, such reliance was misplaced.  No plausible reading of the Court's Order supports such an interpretation.  And to the extent that Plaintiff has assumed that his pleading obligation in this regard was satisfied by his reference to "Caitlyn L's" LinkedIn profile, such assumption was unwarranted, for the reasons detailed above.

Therefore, Plaintiff will be given one last opportunity to amend his Complaint to satisfy the pleading requirements attendant to his causes of action.[10]  Plaintiff may wish to rely on the allegations in his First Amended Complaint, the Court's concerns notwithstanding, but if he wishes to add any other allegations, Plaintiff should be as specific as possible to provide Defendant with notice of his claims.  Plaintiff is also reminded that he is to have a good-faith basis for any allegations.  *See Dumont v. United States*, No. 13-CV-0873, 2013 WL 6240468, at *12 (N.D.N.Y. Dec. 3, 2013) ("Plaintiff is . . . warned that he is not protected from Rule 11 sanctions merely because he appears pro se."); *Mac Truong v. Hung Thi Nguyen*, No. 10-CV-386, 2013 WL 4505190, at *3 (S.D.N.Y. Aug. 22, 2013) ("The fact that a litigant appears *pro se* does not shield him from Rule 11 sanctions." (internal quotation marks omitted)); *Wik v. Kunego*, No. 11-CV-6205, 2013 WL 6073633, at *2 (W.D.N.Y. July 15, 2013) ("Plaintiff is a *pro se* litigant who has brought several actions in this Court over the past several years, and who should therefore be familiar with Rule 11 of the Federal Rules of Civil Procedure.  Plaintiff is hereby cautioned . . . that if he continues to file frivolous applications he may be sanctioned pursuant to Rule 11 . . . .  Such sanctions may include monetary penalties and the dismissal of his actions with prejudice, as the Court, in its discretion, may deem necessary to deter such frivolous and vexatious conduct." (quoting previous court order)).

---

[10] Plaintiff may also explore whether he has a viable claim that Defendant unlawfully retaliated against him for filing his EEOC charge.  *See Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (holding that plaintiff stated a retaliation claim where he alleged that his employer ceased its efforts to rehire plaintiff after he filed a discrimination complaint).

### III.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is denied without prejudice. Plaintiff may file a Second Amended Complaint within 30 days of the issuance of this Opinion, which Complaint may address the deficiencies that the Court has identified.  Alternatively, Plaintiff may notify the Court (and Defendant) that he wishes to proceed with the First Amended Complaint.  Defendant will then be given 20 days either to answer the operative complaint or to file a premotion letter.  The clerk is respectfully directed to terminate the pending Motion.  (*See* Dkt. No. 23.)

SO ORDERED.

Dated:      March 11 , 2014
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE