UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON NDREMIZARA,

                Plaintiff,

      -v-

SWISS RE AMERICA HOLDING CORPORATION,

                Defendant.

Case No. 12-CV-5769 (KMK)

OPINION & ORDER

Appearances:

Jason Remi Ndremizara
Urbandale, IA
*Pro Se Plaintiff*

Susanne Kantor, Esq.
Jennifer Papas, Esq.
Jackson Lewis, P.C.
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Plaintiff Jason Ndremizara ("Plaintiff"), proceeding pro se, brings this Action against

Defendant Swiss Re America Holding Corporation ("Defendant" or "Swiss Re"), alleging that

Defendant's decision not to hire him for an actuarial analyst position for which he applied

violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34,

and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301.

Defendant moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss

Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted.

For the following reasons, Defendant's Motion To Dismiss is granted.

## I. Background

### A. Factual Background

Plaintiff describes himself as a 46-year-old, college-educated African-American with a "strong academic background[] in Mathematics and Computer Science . . . ." (First Am. Compl. 5 (Dkt. No. 18).)[1] Plaintiff is "planning to [pursue an] actuarial career," a field that he characterizes as "a highly skilled applied mathematical profession specialized in the evaluation of financial risk[]." (*Id.*) Plaintiff "saw online [on] [Defendant's] career web site a posting for . . . [an] Actuarial Analyst . . . position[] . . . located in Armonk," New York, and decided to apply. (*Id.* at 6; *see also* First Am. Compl. Ex. 1 (job listing).) Plaintiff states that this position was "entry level," and "requir[ed] no actuarial job experience." (*Id.* at 6.) While Plaintiff is correct that the job posting did not list any actuarial job experience as an "[e]ssential" requirement, it did list as a "[d]esirable" requirement that an applicant have "[t]wo or more years of relevant actuarial experience within [the] Property & Casualty industry[,] preferably in a research role." (First Am. Compl. Ex. 1, at 2.) Plaintiff does not allege that he has such experience. (*See* Def.'s Mem. of Law in Supp. of Its Mot. To Dismiss ("Def.'s Mem.") 3, 4 (Dkt. No. 25); Pl.'s Mem. of Law in Supp. of His Aff'n in Opp'n to Def.'s Mot. To Dismiss ("Pl.'s Mem.") 7 (Dkt. No. 28).)

---

[1] Plaintiff included his statement of facts as an unpaginated attachment to the "Southern District of New York Complaint for Employment Discrimination" form that he filed with the Court as his First Amended Complaint on April 16, 2013. (*See* Dkt. No. 18.) Plaintiff inserted this attachment behind the First Amended Complaint's fourth page. The Court will refer to the relevant pages of this attachment as if continuously paginated after the end of the First Amended Complaint, beginning at page 5.

2

Plaintiff submitted his application on December 5, 2011. (First Am. Compl. 6.) Plaintiff did not list his age or date of birth on the résumé that he sent with his application. (*See* Def.'s Aff. in Supp. of Its Mot. To Dismiss ("Def.'s Aff.") Ex. D.) However, Plaintiff's résumé did list the year in which he graduated with a Master of Science in Statistics and Economics from the École Nationale de la Statistique et de l'Administration Économique ("ENSAE") in Paris, France as 1993, and described Plaintiff as a "[s]easoned statistical analyst," "mature," and a "[m]id-career professional." (*Id.*) After submitting his application, Plaintiff received what appears to have been an automated reply on the same day, in which Defendant informed him that it was "in the process of reviewing [his] application and evaluating [his] possibilities within Swiss Re," and that it would "contact [him] as soon as possible." (First Am. Compl. Ex. 2; *see also* First Am. Compl. 6.) Defendant subsequently rejected Plaintiff's application on December 15, 2011, and "continued to look for other candidates." (First Am. Compl. 6; *see also* First Am. Compl. Ex. 3.) By way of rejection, Swiss Re recruiter Sandra Ferencz ("Ferencz") informed Plaintiff in an email that "[a]fter careful consideration and review of [his] application," the Swiss Re recruitment team had "determined that [Defendant] would not be pursuing [his] candidacy at [that] time," but that Defendant wanted to "maintain [Plaintiff's] candidate profile in [its] electronic database," and "encourage[d] [Plaintiff] to update [his] information as [his] skills or jobs change[d]." (First Am. Compl. Ex. 3.) Approximately two months later, on or about February 16, 2012, Plaintiff "filed a discrimination charge with the U.S. Equal Employment Opportunity Commission ["EEOC"] . . . in New York [C]ity," in which he alleged that Defendant had violated the ADEA in connection with its decision to reject his application. (First Am. Compl. 6; *see also* First Am. Compl. Ex. 13.) Defendant appears to have received notice of

3

Plaintiff's EEOC charge at approximately the same time that Plaintiff filed it. (*See* First Am. Compl. Ex. 13; Def.'s Mem. 5.)

Despite Plaintiff's apparent belief that Defendant discriminated against him based on his age, Plaintiff "checked . . . the [Swiss Re] web site" again in March 2012, "saw that [Ferencz] was still continuing to seek . . . applicants," and thereafter "decided to [once more] submit . . . [his] application for the position[]" for which he had previously applied. (First Am. Compl. 6.) He did so on March 24, 2012, (*id.*), and received the same automated reply that Defendant had sent him following the submission of his first application, (*see* First Am. Compl. Ex. 4). On April 10, 2012, Defendant confirmed its earlier rejection of Plaintiff's application. (First Am. Compl. 6; *see also* First Am. Compl. Ex 5.) Ferencz explained to Plaintiff that "[u]nfortunately, [he had] already applied to [the] position[,] and [was] notified on December 15, 2011 that [Defendant would] not be pursuing [his] candidacy," and that Defendant's "decision to not pursue [his] candidacy for [the] role ha[d] not changed." (First Am. Compl. Ex. 5.)

Plaintiff alleges that, "[a]fter being informed by [the] EEOC of the existence of [his] discrimination charge, [Defendant] started to send [him] . . . an email" every two weeks, in which Defendant wrote that it "wanted to reach out and confirm that [his] application [was] still being considered and [that it was] continuing the recruiting process for the position: Actuarial Analyst." (First Am. Compl. 6; *see also* First Am. Compl. Exs. 6, 7.) Defendant sent the first of four such emails to Plaintiff on April 13, 2012, which, like the other three, identified itself as "automatically generated mail," and asked Plaintiff to "[p]lease . . . not reply." (First Am. Compl. Exs. 6, 7.) One week later, on April 20, 2012, the EEOC informed Plaintiff that it was closing its file on the age-based discrimination charge that he had submitted, as "[b]ased upon its

4

investigation, [it was] unable to conclude that the information obtained establishe[d] violations

of the statutes." (First Am. Compl. Ex.)[2] One week later, on April 27, 2012, Defendant sent a

second email confirming that it was still considering Plaintiff's application and that the recruiting

process was still ongoing. (*See* First Am. Compl. Ex. 6.) Believing that Defendant had "sent

[him] the e-mails in . . . good faith," and undeterred by Defendant's prior rejection of his

application and subsequent confirmation of that rejection, Plaintiff "decided to []submit [his]

application for the Actuarial Analyst . . . position[]" for a third time on May 17, 2012, by which

submission he "aimed to reconfirm [his] interest in the position[]." (First Am. Compl. 6.)[3] On

the same day that he submitted his application, Plaintiff once again received the same automated

reply email that he had received in response to his first two applications. (*See* First Am. Compl.

Ex. 8.) On June 23, 2012, Defendant sent Plaintiff a third automatically generated email

confirming that it was still considering Plaintiff's application and that the recruiting process was

still ongoing, followed by a fourth on July 7, 2012, (*see* First Am. Compl. Ex. 7), before

reiterating its earlier rejection of Plaintiff's application for a second time on August 1, 2012,

(First Am. Compl. 7; *see also* First Am. Compl. Ex. 9). Echoing her previous email, Ferencz

wrote that "[u]nfortunately, [it was] the third time [that Plaintiff had] applied to [the] position,"

---

[2] The EEOC Dismissal and Notice of Rights form described above is attached to
Plaintiff's First Amended Complaint behind a page titled "Attachment," which itself appears
behind Plaintiff's fourteenth exhibit. (*See* Dkt. No. 18.) The EEOC also noted in this form that
its dismissal of Plaintiff's charge did "not certify that [Defendant] [was] in compliance with the
statutes," and that "no finding [was] made as to any other issues that might be construed as
having been raised by [Plaintiff's] charge." (First Am. Compl. Ex.)

[3] The name that Plaintiff used in submitting his third application was different than the
name he had used in submitting his prior two applications. In connection with his third
application, he called himself "Jason Ndremizara" instead of "Remi Randremizara." (*See* First
Am. Compl. Exs. 4–9.)

and that he had been "notified on December 15, 2011 and April 10, 2012 that [Defendant would] not be pursuing [his] candidacy," and that Defendant's "decision to not pursue [his] candidacy for [the] role ha[d] not changed." (First Am. Compl. Ex. 9.)

Plaintiff asserts that the language that Defendant used in its emails "implicitly alleged that [he] was not qualified for the position[]," which "led [him] to investigate what kind of candidates [Defendant] selected or hired for its entry level actuarial analyst positions in Armonk . . . or in other locations such as Dallas, [Texas]," the location of another one of Defendant's offices to which Plaintiff had also applied, and by which he had also been rejected. (First Am. Compl. 7.)   Plaintiff claims that he "discovered that many entry level candidates selected or hired by [Defendant] were younger and less qualified than [him]." (*Id.*)   However, Plaintiff provides no specific examples as part of this claim in his Complaint or any of the exhibits attached thereto.   Indeed, he does not identify whether these supposedly younger or less-qualified people were hired in Armonk (which is the only location relevant to Plaintiff's claims in this Action), Dallas, or both; how much younger they were; or why he believes them to be less qualified.

Plaintiff also alleges that "the single most important qualification for an entry level actuarial candidate is . . . actuarial exam progress," citing to an article titled "Advice on Obtaining an Actuarial Position" from "http://www.beanactuary.org," a website that appears to be run by the Society of Actuaries and the Casualty Actuarial Society. (First Am. Compl. 7; First Am. Compl. Ex. 10.)   According to Plaintiff, "applicants with [one] actuarial exam combined with an excellent internship are desirable; applicants with [two] actuarial exams (Master level) with or without internship[s] are serious candidates; applicants with [three]

actuarial exams (JD/PhD level) stand up [sic]; and all candidates with [four] exams (above JD/PhD level) like [him] have been given a job." (First Am. Compl. 7.) Plaintiff further claims that "[t]he majority of entry level candidates hired by [Defendant] had only between [zero] and [three] actuarial exams at that time whereas [he had] already succeeded . . . [in] pass[ing] [four] exams; therefore they were less qualified than [him] and [he] was far better qualified than many of them." (*Id.*) Again, Plaintiff provides no specific examples of any employees hired by Defendant instead of Plaintiff. Lastly, Plaintiff alleges that the "discrimination against [him] was also particularly malicious because [Defendant] has been unable to find enough actuarial candidates who can pass actuarial exams like [he did]," and that "each year[,] [Defendant] import[s] and train[s] foreign actuarial candidates to fill its demands unmet by Americans," claiming that "in 2012[,] [Defendant] filed 13 green card and H1B visa applications for foreign actuarial candidates." (*Id.*) However, Plaintiff does not allege that these applications were for employees hired instead of Plaintiff.

   B. Procedural Background

   Plaintiff filed his Complaint on July 23, 2012, in which he alleged that Defendant had discriminated against him, based on both his age and his race, in violation of the ADEA, NYSHRL, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. (*See* Dkt. No. 1.) On December 7, 2012, the Court held a pre-motion conference to address Defendant's request to file a Motion to Dismiss Plaintiff's Complaint, after which conference the Court set a briefing schedule. (*See* Dkt. No. 9.) In accordance with this schedule, Defendant filed a Motion To Dismiss on January 1, 2013. (*See* Dkt. (minute entry for Dec. 7, 2012); Dkt. Nos. 10–13.) Defendant argued that Plaintiff had failed to exhaust his administrative

7

remedies as to his race-based discrimination claim, and had failed to state a claim of

discrimination on the basis of either age or race. (*See* Dkt. No. 10.) In response, Plaintiff filed

an Affirmation in Opposition on February 1, 2013. In that Affirmation, Plaintiff appeared to

rescind his race-based discrimination claim under Title VII. Additionally, though he continued

to assert his age-based discrimination claims under the ADEA and NYSHRL, he confined those

age-based discrimination claims to Defendant's August 1, 2012 confirmation of its earlier

rejection of his application, and excluded Defendant's December 15, 2011 rejection of his

application and the April 10, 2012 rejection confirmation. (*See* Dkt. No. 14.) Defendant replied

to Plaintiff's Affirmation on February 28, 2013. (*See* Dkt. Nos. 15–16.)

      In an Order dated March 18, 2013, the Court wrote that "Plaintiff should be aware that

Defendant argues that Plaintiff has failed to exhaust his administrative remedies as to the May

17, 2012 application," noting that "[a] plaintiff may bring an employment discrimination action

under Title VII or the ADEA only after filing a timely charge with the EEOC or with a State or

local agency with authority to grant or seek relief from such practice," and that "a plaintiff

typically may raise in a district court complaint only those claims that either were included in or

are reasonably related to the allegations contained in his EEOC charge." (Dkt. No. 17 (brackets

and internal quotation marks omitted).) Citing "Plaintiff's shifting allegations," the Court denied

Defendant's Motion To Dismiss without prejudice "in order to allow Plaintiff to amend his

complaint and clarify" his claims, and directed Plaintiff to file an Amended Complaint by no

later than April 17, 2013. (*Id.*)

      Plaintiff timely filed his First Amended Complaint on April 16, 2013. (*See* Dkt. No. 18.)

In the First Amended Complaint, Plaintiff asserts only age-based discrimination claims under the

ADEA and NYSHRL, and does not assert the race-based discrimination claim under Title VII that appeared in his original Complaint. (*See* First Am. Compl. 1.) However, the age-based discrimination claims that he asserts in his First Amended Complaint relate not only to Defendant's August 1, 2012 confirmation of its earlier rejection of his application, but also to its December 15, 2011 and April 10, 2012 rejections of his prior applications. (*See id.* at 6–7; Pl.'s Mem. 5.) Following a second pre-motion conference on July 18, 2013, at which Plaintiff did not appear, the Court set a briefing schedule for Defendant's Motion to Dismiss the First Amended Complaint, which Motion the Court had previously granted Defendant permission to file. (*See* Dkt. (minute entry for July 18, 2013); Dkt. No. 21.) Defendant filed its Motion on August 6, 2013. (*See* Dkt. Nos. 23–26.) Plaintiff submitted an Affirmation in Opposition, and a Memorandum in Support of that Affirmation, on September 18, 2013, (*see* Dkt. Nos. 27–28), to which Defendant replied on September 27, 2013, (*see* Dkt. Nos. 29–30). On March 11, 2014, the Court issued an Opinion and Order denying without prejudice Defendant's Motion To Dismiss but identifying various deficiencies in Plaintiff's pleadings. (Opinion Denying Mot. To Dismiss ("March 11 Opinion") (Dkt. No. 31).)

In its March 11 Opinion, the Court gave Plaintiff two options—file a Second Amended Complaint within 30 days of the issuance of the Opinion, which Complaint could address the deficiencies the Court identified in the Opinion, or notify the Court that he wished to proceed with his First Amended Complaint. (*Id.* at 29.) Plaintiff took no action in the 30 days following the issuance of the Opinion, neither amending his Complaint nor informing the Court he intended to move forward with the First Amended Complaint. The Court held a conference on May 29, 2014, but Plaintiff did not appear or participate by telephone. (*See* Dkt. (minute entry

for May 29, 2014).)[4]  At the conference, the Court granted Defendant permission to file a

Supplemental Motion To Dismiss, to which Plaintiff would be permitted to file opposition

papers.  (*See* Mot. Scheduling Order (Dkt. No. 37).)  Defendant filed its Supplemental Motion

To Dismiss on July 15, 2014, (*see* Dkt. No. 38), but Plaintiff did not submit anything in

opposition.[5]

## II.  Discussion

### A.  Standard of Review

#### 1.  Rule 12(b)(6)

Defendant moves to dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds

of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555

(2007) (citations, internal quotation marks, and alterations omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal

---

[4] On April 24, 2014, the Court scheduled the conference for May 29, 2014.  (*See* Dkt. No. 33.)  On April 29, 2014, Plaintiff filed a request for more time, stating that he had been ill, was looking for an attorney, and had been having problems receiving his mail.  (*See* Dkt. No. 34.)  The Court declined to reschedule the conference, noting that "[t]he medical records attached hereto are short on details, and, in any event, say that Plaintiff is able to resume all activities."  (Dkt. No. 35.)

[5] In fact, other than his April 29, 2014 letter, Plaintiff has not submitted anything in the year since the Court's March 11, 2014 Order.

quotation marks and alterations omitted). Instead, a complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff

has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed," *id; see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense. But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hyper-technical, code-pleading regime of a

prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions.").

        "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see*

*also Dixon v. United States*, No. 13-CV-2193, 2014 WL 23427, at *1 (S.D.N.Y. Jan. 2, 2014)

("For the purpose of this motion to dismiss, we assume that the facts alleged in [the plaintiff's]

complaint are true."). Further, "[f]or the purpose of resolving [a] motion to dismiss, the

Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res.,*

*Inc.*, No. 13-CV-4384, 2014 WL 182341, at *1 n.1 (S.D.N.Y. Jan. 16, 2014) (citing *Koch v.*

11

*Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule

12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc.*

*Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also*

*Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20,

2013) (same).

      Because Plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally

and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*,

723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Farzan v. Wells*

*Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same).

However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from

compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, No. 12-CV-

6666, 2013 WL 5863561, at *2 (S.D.N.Y. Oct. 31, 2013) (internal quotation marks omitted); *see*

*also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally

are required to inform themselves regarding procedural rules and to comply with them." (italics

and internal quotation marks removed)).  Furthermore, while pro se litigants are "ordinarily

afforded" "special solicitude," which "takes a variety of forms," including "relaxation of the

limitations on the amendment of pleadings," *Tracy v. Freshwater*, 623 F.3d 90, 100–01 (2d Cir.

2010), "[i]n some circumstances, such as when a particular pro se litigant is familiar with the

procedural setting as a result of prior experience, . . . it falls well within a district court's

discretion to lessen the solicitude that would normally be afforded," *id.* at 102 (italics omitted).

This is one of those circumstances, as this Action is one of nine filed by Plaintiff where he has alleged that a putative employer failed to hire him for discriminatory reasons. *See Ndremizara v. Towers Watson*, No. 12-CV-1358, 2013 WL 4498977, at *1 (D.D.C. Aug. 21, 2013) (granting motion to dismiss, and noting that "this complaint is one of nine nearly-identical complaints, with only the defendant's name changed, filed by [Plaintiff] against other companies that have failed to hire him") (collecting Plaintiff's filed actions).

## 2. Age Discrimination in Employment Act of 1967

The ADEA provides in part that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a). The statute limits the class of persons protected by this prohibition "to individuals who are at least 40 years of age." *Id.* at § 631(a). "To establish a prima facie case [under the ADEA], a plaintiff with an age discrimination claim must show (1) that [he or] she was within the protected age group, (2) that [he or] she was qualified for the position, (3) that [he or] she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (internal quotation marks omitted); *see also Barker v. Ellington Bd. of Educ.*, No. 12-CV-313, 2013 WL 6331159, at *10 (D. Conn. Dec. 5, 2013) (same).[6]

_____

[6] Claims under the NYSHRL are analyzed identically to claims under the ADEA. *See Brown v. City of New York*, No. 10-CV-3104, 2011 WL 6003921, at *6 n.4 (S.D.N.Y. Nov. 30, 2011) (noting that, "[t]o the extent that [the] plaintiff [sought] to invoke the NYSHRL," the court would "analyze[] such allegations under the same . . . framework" that it used for ADEA claims") (collecting cases), *aff'd*, 512 F. App'x 29 (2d Cir. 2013); *Dixon v. Int'l Fed'n of Accountants*, No. 09-CV-2839, 2010 WL 1424007, at *3 (S.D.N.Y. Apr. 9, 2010) ("Discrimination claims under . . . [the] ADEA . . . [and the] NYSHRL . . . are analyzed identically . . . .") (collecting cases), *aff'd*, 416 F. App'x 107 (2d Cir. 2011).

13

As to the third prima facie factor, "[i]n the context of a claim for discrimination under the ADEA, '[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.'" *Visco v. Brentwood Union Free Sch. Dist.*, 991 F. Supp. 2d 426, 436 (E.D.N.Y. 2014) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)). "The Second Circuit has applied this definition broadly to include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Graham v. Watertown City Sch. Dist.*, No. 10-CV-756, 2011 WL 1344149, at *6 (N.D.N.Y. Apr. 8, 2011) (internal quotation marks omitted) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)).

As to the fourth prima facie factor, "[t]here are a variety of ways in which a plaintiff can demonstrate that the adverse employment action took place under circumstances giving rise to an inference of age discrimination." *Del Valle v. City of New York*, No. 11-CV-8148, 2013 WL 444763, at *4 (S.D.N.Y. Feb. 6, 2013) (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502–03 (2d Cir. 2009)), *superseded by statute*, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85, *as recognized in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)). For example, an inference of age discrimination may be raised where a plaintiff "alleges that [he or] she was within the protected class, that [he or] she was rejected for a position, and that the position was filled by a person significantly younger than [him or] her." *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013) (collecting cases). "An age discrimination plaintiff may also seek to rely on . . . comments or remarks evidencing ageist views, evidence that similarly situated younger employees are treated more favorably than older ones, or statistical evidence demonstrating a pattern of adverse

14

employment actions taken against older employees." *Del Valle*, 2013 WL 444763, at *4 (citations omitted).

"[I]n an ADEA case, where a plaintiff [seeks to] rel[y] on a substantial age discrepancy between [himself] and [his] replacement, [he] must adduce some evidence indicating [the] defendant['s] knowledge as to that discrepancy," in order to establish that the adverse employment action that he experienced "occurred under circumstances giving rise to an inference of discrimination." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76, 82–83 (2d Cir. 2005). In "most ADEA cases," "where such knowledge is undisputed," "a court need not specifically address this point; rather it may be assumed in considering whether the circumstances presented indicate intentional discrimination." *Id.* at 83. However, "where a defendant asserts that the record fails to indicate the requisite awareness, a plaintiff must adduce some evidence, whether direct or indirect, indicating a defendant's knowledge as to the relative ages of the persons compared." *Id.* "[D]iscriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant." *Id.* at 82 (italics omitted); *see also Bucalo*, 691 F.3d at 130 ("As we noted in *Woodman v. WWOR-TV, Inc.*, . . . an ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a defendant's knowledge as to the significant age discrepancy to support a prima facie inference of discriminatory intent." (italics and internal quotation marks omitted)); *Brunner v. Novartis Pharm. Corp.*, No. 10-CV-6338, 2013 WL 4647812, at *5 (W.D.N.Y. Aug. 29, 2013) ("[T]o establish a prima facie case of discrimination . . . , the plaintiff must establish that the defendant had knowledge of the candidates['] ages . . . ."); *Andretta v. Napolitano*, 922 F. Supp. 2d 411, 418 (E.D.N.Y. 2013) ("[The p]laintiff may satisfy his minimal prima facie burden merely by

15

showing that [the d]efendant knew of the applicants' age difference and treated younger applicants more favorably than [the p]laintiff." (italics omitted)); *Antunes v. Putnam/N. Westchester Bd. of Co-op. Educ. Servs.*, No. 09-CV-3063, 2011 WL 1990872, at *6 n.17 (S.D.N.Y. May 19, 2011) ("Even if the decision makers did not know [the p]laintiff's exact age, they were surely aware of his approximate age and that he was much older than [the individual whom the defendant promoted instead of the plaintiff]. Therefore, this requirement is satisfied."), *aff'd sub nom. Antunes v. Putnam N. Westchester Bd. of Co-op. Educ. Servs.*, 482 F. App'x 661 (2d Cir. 2012); *Edwards v. William Raveis Real Estate, Inc.*, No. 08-CV-1907, 2010 WL 3829060, at *5 (D. Conn. Sept. 22, 2010) ("As a threshold matter, [the plaintiff] cannot support her inference of age discrimination without evidence that [the defendant and the defendant's representative] were *aware* of the age difference between [the plaintiff] and [the individual who was hired to replace the plaintiff] when [the defendant and the defendant's representative] made their decision to fire [the plaintiff].").

Importantly, a "[p]laintiff need not make out a prima facie case at the pleading stage, and may withstand a motion to dismiss by providing a short and plain statement of the claim that shows that []he is entitled to relief and that gives [the defendant] fair notice of the age discrimination claim and the grounds upon which it rests." *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 6068597, at *1 (S.D.N.Y. Nov. 15, 2013) (italics omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) ("The prima facie case [requirements are] an evidentiary standard, not a pleading requirement. . . . This Court has never indicated that the requirements for establishing a prima facie case . . . also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Kurian v. Forest Hills Hosp.*,

No. 12-CV-4539, 2013 WL 3766588, at *6 (E.D.N.Y. July 15, 2013) ("[T]he survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a prima facie case . . . ." (internal quotation marks omitted)); *McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at *6 (S.D.N.Y. July 10, 2013) ("[A]t this pleading stage[, the plaintiff] is not required to demonstrate every element of a prima facie case of age discrimination." (italics omitted)).  However, "[a]lthough a plaintiff need not plead facts to establish a prima facie case of employment discrimination in order to survive a motion to dismiss," courts nevertheless "consider[] the elements of a prima facie case in determining whether there is sufficient factual matter in the Complaint which, if true, give[s] [the] [d]efendant[] fair notice of [the] [p]laintiff['s] employment discrimination claims and the grounds on which such claims rest." *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 195 (E.D.N.Y. 2010) (italics, alteration, and internal quotation marks omitted); *see also Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) ("Although [the p]laintiff need not allege facts sufficient to make out a prima facie case for any of her discrimination claims in her [c]omplaint, the elements thereof provide an outline of what is necessary to render her claims for relief plausible." (italics omitted)); *Barker v. UBS AG*, No. 09-CV-2084, 2011 WL 283993, at *5 (D. Conn. Jan. 26, 2011) ("[E]ven though establishing a prima facie case of age discrimination is not necessary to survive a motion to dismiss, courts do use the standard as a guidepost when determining whether the plaintiff has provided the defendant with fair notice of her claim, as required by the Federal Rules of Civil Procedure."); *cf. Wolf v. Time Warner, Inc.*, No. 09-CV-6549, 2012 WL 4336232, at *10 (S.D.N.Y. Sept. 17, 2012) ("A Plaintiff in an ADEA action must *plausibly plead*, inter alia, that

17

the circumstances surrounding an adverse employment action give rise to an inference of age discrimination." (emphasis added) (italics omitted) (citing *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)), *aff'd*, 548 F. App'x 693 (2d Cir. 2013).

    B.  Analysis

    In its Supplemental Motion To Dismiss, Defendant reiterates the arguments it previously made and makes three additional arguments.  First, Defendant argues that the Court should take judicial notice of the fact that, of the numerous actions filed by Plaintiff, this is the only action that remains pending, and that Plaintiff's pleadings in this case contain the same deficiencies that led courts in the District of Columbia and the District of Massachusetts to dismiss Plaintiff's claims.  (*See* Def.'s Mem. of Law in Supp. of its Supplemental Mot. To Dismiss ("Def.'s Supplemental Mem.") 8 (Dkt. No. 41).)  Second, Defendant argues that the April 10, 2012 and August 1, 2012 emails were not new adverse employment actions, but were merely confirmations of the December 15, 2011 rejection, and that Plaintiff has not adequately pleaded that Defendant had knowledge of Plaintiff's age in December of 2011.  (*Id.* 13–15.)  Third, Defendant argues that Plaintiff's pleadings "cannot reasonably support an inference of age discrimination" because Plaintiff "failed to plausibly plead that [Defendant] hired a significantly younger person instead of him[.]"  (*Id.* 9–11.)

    1.  Defendant's Judicial Notice Argument is Unavailing

    Defendant argues that "[i]n addition to taking judicial notice of the fact that this Action is one of nine nearly-identical federal complaints filed by Plaintiff against other putative employers that have failed to hire him, this Court should also take judicial notice of the fact that of Plaintiff's nine federal litigations, the instant matter is the *only* case that remains pending."

(Def.'s Supplemental Mem. 7 (emphasis in original).)  Defendant argues that "[t]he legal and factual deficiencies pervading Plaintiff's First Amended Complaint mirror the deficiencies that led to the dismissal of Plaintiff's complaints [in *Ndremizara v. Hanover Ins. Co.*, No. 12-CV-40109, 2013 U.S. Dist. LEXIS 76740 (D. Mass. May 31, 2013), and in *Ndremizara v. Towers Watson*, No. 12-CV-1507, 2013 WL 4498977 (D.D.C. Aug. 21, 2013).]"  (*Id.* at 8.)  "Indeed," Defendant argues, "although Plaintiff managed to change the name of the defendant in each action, Plaintiff relies on the same implausible, conclusory[,] and uncorroborated statements that were insufficient to establish his discrimination claims [in two other cases] to support his claims in the instant matter."  (*Id.*)  The Court is unclear whether Defendant is arguing that the Court should dismiss Plaintiff's Complaint on the sole ground that two other courts have done so in cases with similar pleadings or whether Defendant merely is arguing that the reasoning in these cases should be persuasive to the Court.

The Court declines to dismiss Plaintiff's First Amended Complaint on the sole ground that other courts have dismissed similar cases filed by Plaintiff.  To the extent that the Court takes judicial notice of the pleadings in the other cases,[7] the Court notes that Plaintiff's First Amended Complaint in this case contains different factual allegations than those included in Plaintiff's complaints in *Hanover Insurance* and in *Towers Watson*, despite Defendant's intimation that the only difference between the complaints filed in these cases is the name of the defendant.  (Def.'s Supplemental Mem. 8.)  For example, in his complaint in *Hanover Insurance*,

---

[7] The Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss without converting that motion into a motion for summary judgment.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint filed in another action as a public record pursuant to Federal Rule of Evidence 201(b)).

Plaintiff pleaded only that the defendant did not select him and "it preferred to select and hire younger applicants, mostly White Caucasian and Asian applicants." (Compl. at 3, *Hanover Ins.* (D. Mass. Aug 31, 2012) (Dkt. No. 1).) In his amended complaint filed in *Towers Watson*, Plaintiff alleged only that the defendant "preferred selecting candidates outside [his] protected classes." (Am. Compl. at 3, *Towers Watson* (D.D.C. Dec. 20, 2012) (Dkt. No. 4).) In this case, however, Plaintiff alleges that "[he] discovered that many entry level candidates selected or hired by [Defendant] were younger and less qualified than [he was]," and that "[t]he majority of entry level candidates hired by [Defendant] had only between [zero] and [three] actuarial exams . . . whereas [he] already . . . pass[ed] [four] exams." (First Am. Compl. 7.) Additionally, Plaintiff's allegations regarding the employer's knowledge of Plaintiff's protected status are different in this case than the actions filed in the other districts. In his complaint in *Hanover Insurance* and in his amended complaint in *Towers Watson*, Plaintiff makes *no allegations whatsoever* about how the defendants in those cases knew that Plaintiff was a member of a protected class. Here, though, Plaintiff alleges that Defendant knew that he was over 40, and Plaintiff specifically discusses the notice Defendant got from Plaintiff's EEOC complaint. (First Am. Compl. 10.) Because of these and other differences between Plaintiff's First Amended Complaint and the complaints filed in the other cases, quite simply, this case is different than *Hanover Insurance* and *Towers Watson*. That is not to say that Plaintiff's allegations here are sufficient, but rather that the other courts' decisions in *Towers Watson* and *Hanover Insurance* are not dispositive. Therefore, in deciding Defendant's Supplemental Motion To Dismiss, the Court will consider these decisions only as persuasive authority from outside the District.

### 2. Plaintiff Adequately Pleaded Knowledge of Plaintiff's Age

In its prior Opinion, the Court held that Plaintiff adequately pleaded Defendant's knowledge of Plaintiff's age to survive the Motion To Dismiss. (March 11 Opinion 16–23.) This holding explicitly did not rely on the notice of Plaintiff's age that Defendant would have gotten from Plaintiff's February 16, 2012 EEOC complaint because of the possibility, noted by the Court though not argued by Defendant at the time, that the sole adverse employment action was the December 15, 2011 rejection. (*Id.* 19–23.) Instead, the Court held that Defendant could reasonably have inferred Plaintiff's approximate age from the résumé he submitted. (*Id.* at 16–17, 22.) The Court noted that the résumé that Plaintiff submitted in connection with his December 2011 application listed the year in which he graduated with a Master of Science from ENSAE as 1993, and described Plaintiff as a "[s]easoned statistical analyst," "mature," and a "[m]id-career professional." (*See id.*; *see also* Def.'s Aff. Ex. D.) The Court reasoned that from his graduation date alone, Defendant could reasonably have inferred Plaintiff's approximate age, citing a number of cases in support, including *Bucalo*. (*See* March 11 Opinion 16–17.)

In its Supplemental Motion To Dismiss, Defendant now argues that the only adverse employment action taken by Defendant was the December 15, 2011 rejection of Plaintiff's job application, and that the April 10, 2012 and August 1, 2012 emails were merely confirmations of the December 15, 2011 rejection. (Def.'s Supplemental Mem. 13.) Therefore, Defendant argues, Plaintiff must plausibly plead that Defendant had knowledge of Plaintiff's age by December 2011, and cannot rely on notice of Plaintiff's age from his February 2012 EEOC complaint. (*Id.* at 13–14.) Furthermore, Defendant argues that the Court's reliance on *Bucalo*, "for the proposition that, based on the resume alone, Defendant could have reasonably inferred

21

Plaintiff's approximate age . . . is misplaced because there was additional evidence relied upon in *Bucalo* that is not present here." (*Id.* at 14 (internal quotation marks omitted).) In particular, Defendant argues that in *Bucalo*, "it was not a date on the plaintiff's resume alone that was found to be sufficient to create an issue of fact," but rather it was the date on the résumé "coupled with the additional fact that the decision-maker admitted that he had actually reviewed files which contained the plaintiff's date of birth[.]" (*Id.* (internal quotation marks omitted).) Thus, Defendant essentially asks the Court to reconsider its prior holding that Plaintiff adequately pleaded that Defendant had knowledge of Plaintiff's age based on Plaintiff's résumé.

The Court declines to overturn its prior holding. Defendant's attempt to relitigate this issue runs into the law-of-the-case doctrine. Under that doctrine, a court, "[a]s a general matter . . . will adhere to its own decision at an earlier stage of the litigation." *United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) (internal quotation marks omitted); *see also Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 288 (2d Cir. 2011) (noting that "there is a strong presumption against amendment of prior orders"). The law-of-the-case doctrine is "subject to limited exceptions made for compelling reasons." *Plugh*, 648 F.3d at 123 (internal quotation marks omitted). There are no such compelling circumstances here. *See id.* at 123–24 (listing as the major grounds for reconsideration "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (internal quotation marks omitted)). Defendant gives no reason for overturning the Court's prior ruling other than mere disagreement with the Court's analysis.

22

### 3.  Plaintiff Failed to Plausibly Plead that Defendant Hired a Younger Person Instead of Him

Finally, Defendant argues that "Plaintiff cannot support his inference of age discrimination without evidence that [Defendant] filled the Actuarial Analyst position for which Plaintiff applied with a person significantly younger and less qualified than Plaintiff.  Plaintiff has failed to do so here; and . . . if Plaintiff has failed to plausibly plead that [Defendant] hired a significantly younger person instead of him, Plaintiff has also failed to plausibly plead that [Defendant] was aware of the relative ages of the persons compared."  (Def.'s Supplemental Mem. 11 (citations and internal quotation marks omitted).)  Indeed, despite the Court specifically pointing out these deficiencies in its prior Opinion and granting Plaintiff the opportunity to amend his pleadings again to address them, Plaintiff declined to do so.  To survive a Motion To Dismiss, Plaintiff must allege *something* that plausibly shows he was a victim of age discrimination.  *See, e.g.*, *McManamon*, 2013 WL 3466863, at *4 ("A claim is subject to dismissal where the plaintiff 'fails to plead any facts that would create an inference that any adverse action taken by any defendant was based upon a protected characteristic of the plaintiff.'" (alterations omitted) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)), *appeal dismissed* (Dec. 30, 2013); *Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 390 (W.D.N.Y. 2010) ("In short, [the] plaintiff must allege facts making it at least plausible that her age, gender[,] or complaints about unlawful discrimination were a motivating factor in her employer's decision to terminate her.").  That is, while a plaintiff need not plead all of the elements of a prima facie case to survive a motion to dismiss, he must allege "the essential elements of an employment discrimination claim so as to provide the employer with notice of his claim[,]" *Chang v. City of N.Y. Dep't for the Aging*, No. 11-CV-7062, 2012

WL 1188427, at *6 (S.D.N.Y. Apr. 10, 2012), *adopted by* 2012 WL 2156800 (S.D.N.Y. June 14, 2012), which includes alleging that an adverse employment action against him "occurred under circumstances from which a discriminatory motivation can be inferred," *Shamilov v. Human Res. Admin.*, No. 10-CV-8745, 2011 WL 6085550, at *7 (S.D.N.Y. Dec. 6, 2011). *See also Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *2 (S.D.N.Y. July 22, 2011) ("[A plaintiff] need not plead but-for causation, but an ADEA complaint must contain sufficient facts to make plausible the conclusion that but for his age, [the p]laintiff would still be employed." (brackets and internal quotation marks omitted)); *Shamilov*, 2011 WL 6085550, at *7 ("In alleging disparate treatment based on age, a plaintiff must further demonstrate that his age actually motivated the employer's decision and had a determinative influence on the outcome." (internal quotation marks omitted)).  There are a number of ways Plaintiff could do this, but the only way he attempts to is by making allegations regarding who Defendant hired in lieu of Plaintiff.  However, his pleadings with respect to those who were hired by Defendant instead of Plaintiff are insufficient.

Plaintiff has not plausibly alleged that Defendant filled the actuarial analyst position with a person significantly younger and/or less qualified than Plaintiff.  Among other claims, Plaintiff merely asserts that he "discovered that many entry level candidates selected or hired by [Defendant] were younger and less qualified than [him]," (First Am. Compl. 7), but this assertion is entirely conclusory, "naked," and "devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted), and such conclusory assertions, "without supporting

factual allegations, . . . are not entitled to a presumption of truth," *Thayil v. Fox Corp.*, No. 11-CV-4791, 2012 WL 364034, at *5 (S.D.N.Y. Feb. 2, 2012).[8]

Indeed, Plaintiff provides no details about these supposed employees, including when they were hired, by which office they were hired (Armonk or Dallas), what their experience, age, or qualifications were, or whether Defendant knew their ages. This general and unsubstantiated claim therefore requires dismissal, as Plaintiff fails to allege any facts that would warrant the conclusion that Defendant's failure to hire him occurred under circumstances from which a discriminatory motivation can be inferred. *See Payne*, 2011 WL 3043920, at *2 n.3 (finding pro se plaintiff failed to plausibly plead ADEA claim where plaintiff merely alleged that he was over 40 and was replaced by two younger employees); *Nance v. City of New York*, No. 09-CV-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) ("[A]n allegation that [the] plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss."); *Maysonet v. Citi Group, Inc.*, No. 10-CV-4616, 2011 WL 476610. at *5 (S.D.N.Y. Feb. 9, 2011) (dismissing ADEA claim where plaintiff merely alleged that she was in her mid-40s and that the defendant hired others in their mid-20s, without alleging any facts about the employee who replaced plaintiff); *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 465 (S.D.N.Y. 2010) (dismissing ADEA claim where plaintiffs "merely allege[d] that [they were] over 40 years of age and were replaced by younger teachers" and noting that the complaint "does

---

[8] In his Affirmation, Plaintiff also asserts that he has "affirmed since [his] first complaint that the candidates selected and hired by [Defendant] for its entry level actuarial positions were younger candidates in their 20s or in their early 30s . . . ." (Pl.'s Aff'n 5 (Dkt No. 27.).) Like the assertion described above, this assertion is also conclusory, "naked," and "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

not allege any ageist remarks by" the defendants and that the plaintiffs "do not state who the teachers are that replaced them or their age"), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012); *Zucker v. Five Towns Coll.*, No. 09-CV-4884, 2010 WL 3310698, at *2 (E.D.N.Y. Aug. 18, 2010) (holding that "allegations concerning [the plaintiffs] satisfactory work performance, termination, and much younger replacement [did] not—by themselves—suffice to plead an age discrimination claim").

Furthermore, even were it sufficient to plead that Plaintiff was qualified for the position to which he applied, and that Defendant hired younger applicants as a general matter, Plaintiff's claim would still be dismissed because Plaintiff has not plausibly pleaded that Defendant hired a younger applicant for the same job to which Plaintiff applied. Whether Plaintiff had plausibly pleaded that Defendant hired a significantly younger candidate instead of him was the subject of an exchange between Plaintiff and Defendant in their submissions related to Defendant's first Motion To Dismiss. In the Affirmation in Opposition that Plaintiff filed in response to that Motion on February 1, 2013, in support of his argument that Defendant hired candidates who were significantly younger than him, Plaintiff wrote that "[Defendant] hired Ms. Caitlyn L . . . around August 2012," and that "Ms. Caitlyn L . . . is in her 20s because she graduated from [h]igh [s]chool in 2008." (Dkt. No. 14 at 11–12.) He also attached what appears to be "Caitlyn L's" LinkedIn profile to his Affirmation. (*See id.*) But in its Reply Affirmation, Defendant noted that, "[n]otwithstanding the attachment of various documents and information to Plaintiff's Opposition papers relating to [Defendant's] hiring of 'Caitlyn L,' [that] individual was not hired for any position sought by Plaintiff," and noted that "'Caitlyn L' was in the intern program for [Defendant] as of May 2011," and that as of the time of Defendant's submission of its Reply

Affirmation, she was "in . . . [Defendant's] 18-month graduates program." (*See* Dkt. No. 16 ¶ 7.)
Based on the face of her LinkedIn profile, it appears as though "Caitlyn L" was not employed by
Defendant as an "Actuarial Analyst," the position to which Plaintiff applied, but was instead
hired into Defendant's 18-month graduates program. (*See* Dkt. No. 14 Ex. 12 (describing
"Caitlyn L's" current position as "Graduate - Casualty Pricing at [Defendant]," and stating, "I am
in Swiss Re's 18 month graduates program").

Singling out an individual who happens to work for Defendant in the same general field
and at the same location as Plaintiff would have had he been hired, or broadly stating that "many
entry level candidates selected or hired by [Defendant] were younger or less qualified than
[Plaintiff]," does not establish that these individuals were hired *instead of* Plaintiff for the
position for which he applied. *See Munoz-Nagel*, 2013 WL 1809772, at *7 ("[The plaintiff]
alleges that [the d]efendant preferred to hire college students and younger applicants[,] that most
of the applicants for the job she applied for were younger than her[,] and that she believes most
of them were hired. Although [the p]laintiff is entitled to plead facts upon information and
belief, she has failed to accompany her allegations with . . . a statement of the facts upon which
the belief is founded. Accordingly, because [the p]laintiff has pointed to no information that
would render her belief that younger applicants were hired over her anything more than a
conclusory assertion, the [c]ourt finds that she has failed to state a claim under the ADEA."
(citation, internal quotation marks, and alterations omitted)).  Plaintiff does not plausibly plead
that Defendant hired younger and/or less qualified applicants instead of him, nor does he plead
any other facts that would give rise to an inference that the adverse employment action was taken
for discriminatory purposes.

For the above reasons, the Court grants Defendant's Motion To Dismiss. This dismissal is with prejudice. While "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once," here the Court has already twice granted Plaintiff leave to amend. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Furthermore, in the March 11 Opinion, the Court informed Plaintiff that it was granting him "one last opportunity to amend his Complaint to satisfy the pleading requirements attendant to his causes of action," and Plaintiff declined to further amend his pleadings. *See Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (holding while that "[g]enerally leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim[,] . . . a motion to amend should [nonetheless] be denied if there is an apparent or declared reason—such as . . . repeated failure to cure deficiencies by amendments previously allowed" (italics, citations, and internal quotation marks omitted)); *Cobb v. Alabama Dep't of Human Res.*, No. 09-CV-226, 2010 WL 2079872, at *2 (M.D. Ala. Apr. 30, 2010) ("[The p]laintiff has been afforded several opportunities to amend her complaint in order to state her claims and otherwise conform with governing rules of procedure. Moreover, in granting [the p]laintiff's last two requests for leave to amend, the [d]istrict [j]udge and the undersigned have admonished [the p]laintiff that each amended complaint would be her final opportunity to amend. Given these numerous opportunities, it strains any reasonable construction of 'justice' to suggest that [the p]laintiff should be given yet another opportunity to amend."), *adopted sub nom. Cobb v. Alabama*, 2010 WL 2079868 (M.D. Ala. May 24, 2010); *Morale v. Yates*, No. 07-CV-1460, 2008 WL 5220995, at *1 (E.D. Cal. Dec. 15, 2008) (noting that "[t]he court found that the original complaint did not state a claim," "the

court gave [the p]laintiff notice of the complaint's pleading deficiencies and an opportunity to amend[,]" and that "[the p]laintiff failed to comply with the court's order to file an amended complaint," and therefore dismissing the pro se plaintiff's complaint with prejudice); *Slangal v. Getzin*, 148 F.R.D. 691, 700 & n.14 (D. Neb. 1993) (dismissing a pro plaintiff's complaint with prejudice pursuant to Rule 12(b)(6) because the "plaintiff ha[d] received full notice of the insufficiency of his original complaint and received a meaningful opportunity to respond through an invitation to file an amended complaint in order to remedy the noted failings" and the amended complaint failed to remedy the identified deficiencies); *U.S. ex rel. Dattola v. Nat'l Treasury Emps. Union*, 86 F.R.D. 496, 499 (W.D. Pa. 1980) ("Since plaintiff has ignored opportunities to amend his pleadings, this dismissal will be final and with prejudice."). Finally, as explained above, Plaintiff is entitled to less solicitude than the average pro se litigant because this Action is one of nine filed by Plaintiff claiming discriminatory failure to hire.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is granted with prejudice.  The Clerk of the Court is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 23), and to close the case.

SO ORDERED.

Dated:       March 18, 2015
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

29